```
              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )   Chapter 7
JONATHAN MARK BALM               )
                                )   Bankruptcy No. 04-00055
     Debtor.                    )
------------------------------- )
MARIA P. SAVOY f/k/a            )
MARIA P. BALM                   )   Adversary No. 04-9060
     Plaintiff.                 )
                                )
vs.                             )
                                )
JONATHAN MARK BALM               )
                                )
     Defendant.                 )
```

**ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY**

The above captioned matter came on for hearing on April 27, 2005 on Plaintiff's complaint to determine dischargeability of a debt.  Plaintiff Maria P. Savoy ("Plaintiff") was represented by attorney Janice McCool. Defendant Jonathan Balm ("Debtor") was represented by attorney David Nadler.  After the presentation of evidence and arguments of counsel, the Court took the matter under advisement.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Plaintiff Maria P. Savoy alleges that, under § 523(a)(15), a non-support dissolution obligation for mortgage arrearages created in the parties' Divorce Decree is excepted from discharge in Defendant's Chapter 7 bankruptcy. Debtor alleges that the debt is dischargeable.  Additionally, Debtor argues that his obligation to pay the arrearages was eliminated by Plaintiff's refinancing of the home mortgage debt.

**FINDINGS OF FACT**

Plaintiff and Debtor were granted a dissolution of marriage on September 30, 2003.  The Decree states that Debtor

was assigned "any arrearage in the mortgage indebtedness accruing prior to the date of trial. He shall further reimburse Maria $224 for the costs of abstracting previously done." The dissolution trial was conducted on May 19, 2003. Plaintiff and Defendant dispute the amount of arrearage debt that existed at the time of trial. Plaintiff asserts that the amount of arrearage was approximately $11,000 while Debtor submitted evidence that the arrearage and abstracting fee totaled around $6,000.

    The decree further provides that Plaintiff was awarded property located at 957 14th Street "free and clear" of any claim by Debtor, "but subject to any indebtedness currently a lien on the property." The 14th Street property had originally been purchased by Plaintiff and her first husband, Mr. Savoy. At the time of the divorce, the property was encumbered by a purchase money mortgage executed in 1997 by Plaintiff and Mr. Savoy. Plaintiff was awarded the 14th Street residence in her first divorce but, because of her 1999 bankruptcy filing, was not able to either assume the existing mortgage or qualify for a new mortgage. Plaintiff testified that her inability to qualify for financing precluded the transfer of the property into her name. Debtor, who had started dating Plaintiff around this time, agreed to assume the 1997 mortgage and the property was deeded in his name. Plaintiff testified that Debtor assumed the mortgage with the intent of adding Plaintiff on the deed as a co-owner of the property. Debtor failed to add Plaintiff to the deed during the period of their marriage. Sometime after the entry of the parties' divorce decree, Debtor complied with an order of the dissolution court and deeded the 14th Street property to Plaintiff.

    In November of 2003, Plaintiff refinanced the 14th Street property in order to gain access to equity and pay attorney's fees associated with her divorce. Plaintiff's refinancing completely paid off the 1997 mortgage, including the arrearages for which Debtor was liable under the Dissolution Decree. The refinancing raised Plaintiff's monthly house payment, including property taxes and insurance, from $600 to $1,100.

    The parties' respective living situations have changed since the issuance of the Decree. While the parties' marriage did not produce any children, Debtor had three children from a previous marriage. At the time of the parties' dissolution,

2

Debtor was making monthly child support payments of $1,250 per month. Since the divorce, one of debtor's children, a seventeen-year old boy, has taken up residence at Debtor's apartment. This change in living arrangements has lowered Debtor's monthly child support obligation to $800, although Debtor testified that many of his other monthly expenses have increased.

Debtor continues to work for the Source Management Group, an inventory solutions company which he founded during his marriage to Plaintiff. The Decree awarded Debtor sole ownership of 50,000 shares of company stock which he had owned jointly with Plaintiff. After hearing expert testimony, the dissolution court valued the stock at $1.50 per share. To date, Debtor's company has failed to earn a profit. Because of this, the company's board of directors has lowered Debtor's salary from $60,000 to $36,000. Debtor also testified that he currently owes approximately $3,500 in past-due child support and that he is having difficulty making the required $800 per month payments.

Plaintiff resides with four children and receives approximately $1,200 per month in child support. She currently works as a commissioned salesperson for Clear Channel Radio and is paid at a rate equal to $60,000 per year. However, at the end of her training period in May of 2005, Plaintiff's monthly salary will be based solely on her commissions and will likely fluctuate from month to month. Neither the Plaintiff nor the Debtor are currently in a sound financial position.

Debtor filed his Chapter 7 petition on January 9, 2004. Shortly thereafter, Plaintiff filed a "Complaint Objecting to Discharge Pursuant to § 523(a)." Debtor moved to dismiss the complaint wherein he averred that the absence of indemnity or hold harmless language in the dissolution decree kept this debt from coming under the purview of § 523(a)(15). The Court rejected Debtor's claims and denied the motion. See In re Balm, 2004 WL 1637033, *3, Adv. No. 04-9060, slip op. at 3 (Bank. N.D. Iowa July 2, 2004) ("Balm I").

## CONCLUSIONS OF LAW

A plaintiff must prove the elements of its claim under § 523(a) by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 285 (1991).

## THE EXISTENCE OF AN OBLIGATION

The determination of whether a divorce decree or property settlement creates an obligation between the parties is governed by state law. <u>Balm I</u>, Adv. No. 04-9060, slip op. at 4. In Iowa, it is the existence of state law enforcement remedies, not specific hold harmless or indemnity language in a decree, which gives rise to a new debt between the parties. <u>Id.</u> Iowa law provides that a spouse may enforce a property division pursuant to a dissolution decree against a non-paying former spouse through either contempt proceedings or execution. <u>Id.</u> Therefore, a dissolution decree entered in an Iowa Court creates a new and enforceable obligation between the former spouses, irrespective of their shared liability to the third-party creditor. <u>Id.</u> The satisfaction by one spouse of a debt which gave rise to a dissolution debt owed by the other spouse does not eliminate that spouse's obligation to the other. <u>See</u> <u>Hansen v. Anderson, Wilmarth & Van Der Maaten</u>, 630 N.W.2d. 818, 823 (Iowa 2001) (providing that a party paying the debt of another can recover through indemnity, a right "which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other").

At trial, Debtor posited that any obligation he owed to Plaintiff for mortgage arrearages was eliminated by her refinancing of the mortgage debt. As this Court stated in <u>Balm I</u>, a dissolution decree creates a new obligation between the former spouses, irrespective of the debt owed to a third party. While Plaintiff's refinancing might have eliminated any obligation that Debtor owed to the mortgage bank, it did not eliminate the dissolution debt he owed to her as a result of the divorce decree. Plaintiff has a right to recover from Debtor the amounts she paid on his behalf.

## SECTION § 523(a)(15)

Section 523(a)(15) precludes the discharge of non-support debt that is

4

>     incurred by the debtor in the course of a divorce or
>     separation or in connection with a separation
>     agreement, divorce decree or other order of a court
>     or record . . . unless –
>
>> (A) the debtor does not have the ability to
>> pay such debt from income or property of
>> the debtor not reasonably necessary to be
>> expended for the maintenance or support of
>> the debtor or a dependent of the debtor . .
>> . or
>
>> (B) discharging such debt would result in a
>> benefit to the debtor that outweighs the
>> detrimental consequences to a spouse,
>> former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). For a debt to be considered nondischargeable under § 523(a)(15), it must not be of the kind described in § 523(a)(5). In re Fellner, 256 B.R. 898, 902 (B.A.P. 8th Cir. 2001). If the debt satisfies this threshold requirement as a non-support property settlement award, "a rebuttable presumption of nondischargeability is created." In re Moeder, 220 B.R. 52, 56 (B.A.P. 8th Cir. 1998). The burden then shifts to the debtor to establish either (1) an inability to pay the debt; or (2) that the benefit received from discharging the debt would outweigh the corresponding detriment to the plaintiff. Id.

### § 523(a)(15)(A): ABILITY TO PAY

Under § 523(a)(15)(A), a non-support obligation is discharged if "the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent." 11 U.S.C. § 523(a)(15)(A). Given the similarity in the language of 11 U.S.C. § 1325(b)(2) to § 523(a)(15)(A), courts apply the Chapter 13 disposable income analysis to (a)(15)(A). In re Brown, 302 B.R. 637, 644 (Bankr. N.D. Iowa 2003).

The application of this analysis involves an investigation into (1) whether the debtor's essential and discretionary expenditures are reasonably necessary; and (2) whether the debtor has sufficient disposable income to pay the debt within a reasonable time.

5

**1. ARE DEBTOR'S EXPENSES REASONABLY NECESSARY?**

While some courts analyze the reasonableness of a debtor's expenses by looking at each expense individually, this Court takes a more holistic approach and separates the expenses into two main categories: (1) essential expenses, which include items such as food, utilities, housing, and health care; and (2) discretionary expenses. In re O'Shaughnessy, 301 B.R. 24, 31 (Bankr. N.D. Iowa 2003). The Court then determines whether the aggregate expenses in each category are reasonably necessary. Id.

In determining if a debtor's expenses are reasonably necessary, the Court notes that such a standard does not require the debtor to "live by bread alone, but allow[s] some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions, and other expenses." Id. This latitude is tempered by the Court's attempt to "seek a balance between allowing a debtor a reasonable lifestyle and insuring a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses." In re Eiklenborg, 286, B.R. 718, 722 (Bankr. N.D. Iowa 2002).

Debtor stated that his current monthly expenses are as follows:

| | | |
|---|---|---:|
| 1. | Rent | $615.00 |
| 2. | Utilities | 150.00 |
| 3. | Water and Sewer | 40.00 |
| 4. | Telephone | 20.00 |
| 5. | Cable | 50.00 |
| 6. | Food | 300.00 |
| 7. | Clothing | 100.00 |
| 8. | Laundry/Dry Cleaning | 25.00 |
| 9. | Medical/Dental | 50.00 |
| 10. | Transportation | 230.00 |
| 11. | Insurance | 360.00 |
| 12. | Child Support | 800.00 |
| 13. | Personal Care | 35.00 |
| 14. | Housekeeping Supplies | 36.00 |

**Total Monthly Expenses    $2,811.00**

Debtor has not listed any significant discretionary expenses. There is no allowance made for entertainment and all of the listed expenses appear reasonable in amount given his current situation. Several of Debtor's monthly expenses have changed since the filing of his bankruptcy petition. Most notably, his child support expense has decreased from $1,250 per month to $800 per month, although he testified that he currently makes payments of around $550 per month. The only discretionary expenses are cable TV at $50 but this expense is not unreasonable in the aggregate.

Essential expenses include such items as food, utilities, housing and health expenses. Together with his child support payment, Debtor's necessary and essential expenses total $2,761. This amount is reasonable considering it includes support for two families.

## 2. DOES DEBTOR HAVE SUFFICIENT DISPOSABLE INCOME TO PAY THE DEBT?

Courts consider both the debtor's current and future financial situation when determining disposable income. Eiklenborg, 286 B.R. at 722. Accordingly, the next step in the analysis is to determine whether the debtor will be able to pay off the non-support debt over a reasonable period of time. In re Hildreth, No. 99-9139F, slip op. at 5-6 (Bankr. N.D. Iowa Sep. 6, 2000)("Determining ability to pay by reference to a reasonable period of time should ensure that the court's finding is realistic, and not merely a mathematical possibility.") The time period, however, is not limited to the length of a Chapter 13 plan. Id. at 6. While "presumptively a reasonable time to pay on debts, . . . there seems to be no reason to use the plan term as the upper limit of reasonableness of time." Id. In considering a debtor's ability to pay, the court may consider the income of a new spouse or fiancé. In re Shea, 221 B.R. 491, 499 (Bankr. D. Minn 1998).

Debtor's net monthly income has changed since the entry of the dissolution decree. At that time, Debtor was receiving a salary of approximately $60,000 per year. According to Schedule I of his bankruptcy petition, Debtor's current net monthly income is approximately $2,370, which equates to approximately $36,000 per year. Debtor is the president and a principal shareholder of the Source Management Group. Despite his testimony to the contrary, it appears as though Debtor's

7

company may show profitability within the foreseeable future. This can be evidenced by Source Management Group's recent sales growth and the fact that equity investors continue to fund the company's operations. Although Debtor does not currently possess the ability to pay the dissolution debt out of his monthly income, the Court finds that he does have the ability to repay the debt considering his current and future financial situation. Debtor owns 50,000 shares of Source Management Group stock which the dissolution court determined have a total value of approximately $75,000. These shares amount to a 5% ownership interest in the company and could be sold to other equity holders to generate cash in order to pay off the dissolution obligation. Additionally, given the company's future prospects, Debtor's income may well increase in the near future thereby allowing him to make monthly payments on the debt without having to cash in his shares of company stock.

### § 523(a)(15(B): BENEFIT TO DEBTOR VERSUS DETRIMENT TO PLAINTIFF

Even if the Court determines that Debtor has the ability to pay under § 523(a)(15)(A), the debt may still be discharged under § 523(a)(15)(B). Non-support dissolution debt is dischargeable despite the debtor's ability to pay under subsection (A) if "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." 11 U.S.C. § 523(a)(15)(B). The central factor in this inquiry is the comparison of the parties' standards of living. Eiklenborg, 286, B.R. at 722; In re Johnson, No. 03-9032, slip op. at 5 (Bankr. N.D. Iowa Feb. 12, 2004). This exception to nondischargeability does not apply where a debtor's standard of living is "above or about equal to" that of the ex-spouse. Johnson, No. 03-9032, slip op. at 5.

Plaintiff has a monthly net income of approximately $4,400. This amount includes Plaintiff's child support of $1,200 per month. Plaintiff's monthly income has changed since the filing of the divorce decree. Her oldest daughter reached the age of majority and, although she continues to support her daughter, her monthly child support income was reduced from $1,561 to $1,200. Additionally, Plaintiff obtained new employment which, at least in the short term, has substantially increased her monthly earnings. Plaintiff listed her current expenses as follows:

```
 1. Mortgage/Real Estate Taxes/Insurance     $1,100.00
 2. Electricity and Heat                        125.00
 3. Water/Sewer                                  90.00
 4. Telephone                                   100.00
 5. Cable                                        50.00
 6. "Mid American"                              130.00
 7. Home Maintenance                            300.00
 8. Food                                        600.00
 9. Clothing                                    400.00
10. Laundry                                     150.00
11. Medical/Dental                              350.00
12. Transportation                              250.00
13. Charitable Contributions                    150.00
14. Insurance                                   367.00
15. Auto Payments                               290.00
16. "College"                                   250.00
17. "School Lunches"                            250.00
18. "Student Loans"                              50.00
19. "Hair Cuts - Kids"                           60.00
20. "Religion Program"                           30.00
21. Entertainment                               300.00
                                              ─────────
        Total Monthly Expenses                $5,392.00
```

Considering the expenses listed above, Plaintiff currently has negative cash flow of approximately $1,000 per month. Plaintiff's only listed discretionary expenses are $300 for "entertainment," $60 for haircuts, and $50 for cable. After removing these expenses from the calculation, Plaintiff still has a monthly deficit of approximately $600. Additionally, the parties enjoy similar standards of living. Each spends the majority of their monthly income supporting minor children.

Considering Debtor's current equity holdings as well as his future income prospects, it appears that he is better suited than Plaintiff to handle payment of the mortgage arrearages. Thus, the benefit to Debtor from discharging this debt does not outweigh the detriment to Plaintiff.

## CONCLUSION

The non-support dissolution debt owed by Jonathan Mark Balm to Maria Savoy falls within the scope of § 523(a)(15). This section was enacted for the specific purpose of

prohibiting the transfer of debts from an individual to a former spouse by declaring bankruptcy. O'Shaughnessy, 301 B.R. at 32. This is the exact situation before this Court. Notwithstanding this purpose, a non-support dissolution debt is dischargeable if a debtor can prove, by a preponderance of the evidence, the applicability of the exceptions found in § 523(a)(15)(A) and (B). Debtor has failed to prove either of these exceptions by a preponderance of the evidence as required by law. Debtor's anticipated household income and current stock holdings are sufficient to cover his existing monthly expenses as well as the dissolution debt. Furthermore, Debtor enjoys a standard of living which, in every objective sense, is equal to or superior to that of Maria Savoy.

Therefore, the Court orders as follows:

**WHEREFORE**, for the reasons set forth herein, Plaintiff's Complaint to determine dischargeability is GRANTED.

**FURTHER**, Plaintiff's request to except the non-support dissolution debt for mortgage arrearages from discharge under § 523(a)(15) is GRANTED.

**FURTHER**, if the actual amount owed or the terms of repayment are in controversy, that amount or those terms can be determined by the dissolution court.

Dated and Entered: __May 10, 2005_____

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE